# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**LARRY ARNOLD YOUNG,**

        **Plaintiff,**

**v.**                                                          **Civil Action No. 3:06cv110**
                                                                         **(Judge Bailey)**

**DOMINIC A. GUTIERREZ, SR., S.I.S. TECH**
**KOVSCEK AND WAYNE S. WORKMAN,**

        **Defendants.**

## OPINION/REPORT AND RECOMMENDATION

On October 19, 2006, the *pro se* plaintiff initiated this case by filing a civil rights complaint against the above-named defendants. On November 17, 2006, the plaintiff filed an amended complaint and paid the entire $350 filing fee. Accordingly, this case is before the Court for an initial review and report and recommendation pursuant to 28 U.S.C. § 1915A[1] and LR PL P 83.02, et seq.

## I.  The Complaint

According to the complaint, the plaintiff is currently incarcerated at the Federal Correctional Institution in Morgantown, West Virginia ("FCI-Morgantown"). The defendants are employees of that institution.

As grounds for his complaint, the plaintiff first asserts that on June 9, 2006, defendant Workman conducted a pat down search of him, during which he took the plaintiff's Aiwa radio and ear buds. The plaintiff further asserts that defendant Workman fabricated a disciplinary charge

---

[1] Because Plaintiff is a prisoner seeking redress from a governmental entity or employee, the Court must review the complaint to determine whether it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief.. 28 U.S.C. §§ 1915A(a) and (b).

against him based on a pouch of a tobacco found in the hallway. As a result, the plaintiff was escorted to the Special Housing Unit ("SHU") pending further proceedings.

Second, the plaintiff asserts that during the pat down, defendant Workman took property from the plaintiff's locker and placed it in his pockets. Defendant Workman then had another officer pack the plaintiff's property and secure it in the Randolph Unit Team Room.

Third, the plaintiff asserts that after securing the plaintiff's property in the team room, defendant Workman unpacked the plaintiff's property and took various items and either placed them in his pockets or threw them in the trash. The remainder of the plaintiff's property was taken to the SHU and packed in property boxes.

Fourth, the plaintiff asserts that two or three soda cans exploded in his property ruining various items, and that several other items, including his brother's last will and testament and some photographs, are missing. The plaintiff asserts that defendants Workman and Kovscek deny that any of the plaintiff's property is missing.

Fifth, the plaintiff asserts that the incident report fabricated by defendant Workman was eventually expunged from his record. However, the plaintiff asserts that defendant Kovscek had him detained in the SHU for five additional days.

As relief, the plaintiff seeks an Order from the Court directing that his personal property be located and returned. The plaintiff asserts that he filed administrative remedies with regard to the claims raised in the complaint, but that those remedies were rejected as untimely.

## II. The Amended Complaint

In the amended complaint, the plaintiff asserts that while he was in the SHU his cell was overrun with ants and that he suffered from ant bites. The plaintiff further asserts that he brought

the ant problem to the attention of the SHU officers, but that his complaints were ignored. The plaintiff also asserts that he requested medical attention for his ant bites, but that he was denied treatment.

Also in the amended complaint, the plaintiff asserts that he suffered an injury to his right ear due to the defendants' constant banging on his cell door. The plaintiff asserts that as a result of the defendants actions, he now has hearing problems and pain in his right ear.

Finally, the plaintiff asserts that upon his return to the general population, he fell across the sharp edge of a homemade bed frame and fractured a rib.

Because it was not clear from the amended complaint whether the plaintiff had exhausted his administrative remedies with regard to the additional claims, on November 29, 2006, the undersigned directed the plaintiff to file proof of exhaustion. On December 13, 2006, the plaintiff filed copies of several attempts that he has made to exhaust his administrative remedies with regard to his additional claims. However, the plaintiff asserts that he has not received any response to his requests.

### III.  The Plaintiff's Motion to Amend

On March 26, 2007, the plaintiff filed a motion to amend his complaint. In the motion, the plaintiff asserts that since the filing of this action, defendants Workman and Kovscek have continued to harass and retaliate against him. For example, the plaintiff asserts that on March 13, 2007, those defendants tampered with his commissary account causing his account to be overdrawn. Moreover, defendant Kovscek wrote an incident report charging the plaintiff with a violation of Code 217, Giving or Receiving Money or Anything of Value From Another Inmate or Person for Prohibited Reasons.

In addition, the plaintiff asserts that on March 12, 2007, defendant Kovscek had the plaintiff fired from his job as an orderly and given less desirable employment on the compound. The plaintiff asserts that such action was done with the full knowledge that the plaintiff had his spleen removed and has a low tolerance for germs. Since being placed on compound duty, the plaintiff asserts that he has developed the flu, strep throat and a fever.

The plaintiff wishes to add or supplement these claims to his complaint.

## IV. Analysis

### A. Warden Gutierrez

Liability in a Bivens case is "personal, based upon each defendant's own constitutional violations." Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir.2001)(internal citation omitted). Thus, in order to establish liability in a Bivens case, a plaintiff must specify the acts taken by each defendant which violate his constitutional rights. See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); Colburn v. Upper Darby Township, 838 F.2d 663, 666 (3rd Cir. 1988). Some sort of personal involvement on the part of the defendant and a causal connection to the harm alleged must be shown. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986). *Respondeat superior* cannot form the basis of a claim for a violation of a constitutional right in a Bivens case. Rizzo v. Good, 423 U.S. 362 (1976).

However, in Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized that supervisory defendants may be liable in a Bivens action if the Plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional

violations." In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." Id.

Nonetheless, a plaintiff cannot establish supervisory liability merely by showing that the subordinate was deliberately indifferent to his needs. Id. Instead, Plaintiff must show that the supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. Id. Moreover, in reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. Id.

In this case, the plaintiff does not allege any personal involvement on the part of Defendant Gutierrez. Instead, it appears that the plaintiff has named Defendant Gutierrez merely in his official capacity as the Warden at FCI-Morgantown. However, a suit against government agents acting in their official capacities is considered a suit against the United States itself. See Kentucky v. Graham, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally present only another way of pleading an action against an entity of which an officer is an agent.'"). Thus, because remedy under Bivens is against federal officials in their individual capacities, and not the federal government, the plaintiff cannot maintain a claim against Warden Gutierrez in his official capacity.

Additionally, the plaintiff has failed to show that defendant Gutierrez tacitly authorized or was indifferent to the alleged violation of his constitutional rights. Thus, the plaintiff has failed to make the appropriate showing of supervisory liability. Accordingly, the plaintiff has failed to state a claim against Warden Gutierrez and Warden Gutierrez should be dismissed as a defendant in this

action.[2]

B. **Defendants Workman and Kovscek**

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaust of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[3] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

In addition, although the exhaustion of administrative remedies should generally be raised by the defendant as an affirmative defense, Jones v. Bock, 127 S.Ct. 910, ___ U.S. ___ (2007), the court is not foreclosed from dismissing a case *sua sponte* on exhaustion grounds if the failure to exhaust is apparent from the face of the complaint. See Anderson v. XYZ Prison Health Services, 407 F.3d 674, 681 (4th Cir. 2005).

The Bureau of Prisons makes available to its inmates a three level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10,

---

[2] To the extent the plaintiff is asserting that Defendant Gutierrez may have been deliberately indifferent to his serious medical needs by denying the plaintiff's institutional grievances, that claim is without merit. This is not the type of personal involvement required to state a Bivens claim. See Paige v. Kupec, 2003 WL 23274357 *1 (D.Md. March 31, 2003).

[3] Id.

et seq. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located. (For inmates confined at FCI-Morgantown, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.) If the Regional Office denies relief, the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies.

      1. Claims Pertaining to the Confiscation of Plaintiff's Property

In the complaint, the plaintiff asserts that he attempted to exhaust his administrative remedies with regard to these claims, but that his administrative remedies were rejected as untimely. The plaintiff has attached the rejection notices to his complaint as exhibits.

According to the BOP's administrative remedy procedures, if an inmate is unable to resolve his complaint informally, he may file a formal written complaint to the Warden on the proper forms within 20 calendar days of the date of the occurrence on which the complaint is based. See 28 C.F.R. § 542.14(a). Moreover, an inmate may procedurally default his claims by failing to follow the proper procedures. See Woodford v. Ngo, 126 S.Ct. 2378 (2006) (recognizing the PLRA provisions contain a procedural default component).

Here, the alleged pat down and confiscation took place on June 9, 2006. The plaintiff's formal administrative complaint to the Warden was not filed until August 1, 2006. Accordingly, the plaintiff's administrative remedies with regard to his property claims were properly rejected as untimely by the BOP and the plaintiff has procedurally defaulted those claims.

2. Plaintiff's Amended Claims

In his amended complaint, the plaintiff complains that he suffered ant bites while in the SHU, that the ant bites were not treated, that he suffered an injury to his right ear as a result of the defendants banging on his cell door and that he broke a rib when he fell across the sharp edge of a homemade bed frame.

It is clear at this time that the plaintiff has not raised these claims through the entire administrative remedy process. However, the plaintiff claims that such failure is through no fault of his own. The plaintiff asserts that he has filed administrative remedies, but that the defendants have failed to respond to his requests and that there is nothing more he can do

It is widely recognized among the circuits that administrative grievances are not "available" under 42 U.S.C. § 1997(e) when prison officials fail to timely respond to a properly filed grievance. See Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002); Lewis v. Washington, 300 F.3d 829, 833 (7th Cir. 2002); Foulk v. Charrier, 262 F.3d 687, 698 (8th Cir. 2001); Powe v. Ennis, 177 F.3d 393, 394 (5th Cir. 1999); Johnson v. Henson, 2007 WL 135973 (E.D. Cal. Jan. 17, 2007). Thus, those courts have determined that when prison officials fail to respond to properly filed grievances, exhaustion occurs.

At this time, the undersigned is of the opinion that the plaintiff's amended claims should be served upon the defendants and that the defendants should be required to file an answer to those claims. The Court would, however, reserve the right to determine whether the plaintiff's claims are actually exhausted until such time as an answer is received from the defendants.

### V. Plaintiff's Motion to Amend

The events described in the plaintiff's motion to amend occurred after the filing of this case. In fact, those claims occurred only two months ago. It is simply not possible that the plaintiff could have exhausted those claims in such a short period of time.[4] Moreover, it is likewise impossible for those claims to have been exhausted prior to the filing of this case. Accordingly, the plaintiff's Motion to Amend (dckt. 18) is **DENIED**.

### VI. Recommendation

For the reasons set forth herein, the undersigned makes the following recommendations:

(1) defendant Gutierrez be DISMISSED with prejudice.

(2) the plaintiff's claims involving the confiscation of his property, including his brother's will and certain photographs, be DISMISSED with prejudice.

(3) the plaintiff's amended claims be SERVED upon defendants Workman and Kovscek and those defendants be required to file an answer.

Within ten (10) days after being served with a copy of this Opinion/Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A

---

[4] The plaintiff must first attempt informal resolution of his claim. 28 C.F.R. § 542.13(a). If his complaint is not informally resolved, the plaintiff must then submit a formal remedy with the Warden within 20 calendar days from the date the event occurred. § 542.14(a) If the plaintiff is not satisfied with the Warden's response, he may file an appeal with the regional office within 20 days from the date the Warden's response was issued. § 542.15(a). If unsatisfied with the regional response, the plaintiff has 30 days to file an appeal with the Central Office. Id. In responding to the plaintiff's formal requests, the Warden has 20 days to respond, the Regional Office has 30 days to respond and the Central Office has 40 days to respond. § 542.18. Moreover, each level may extend the time to consider a remedy or appeal. Id. Accordingly, given the time frames set forth in the regulations, it would have been impossible for the plaintiff to have exhausted his administrative remedies prior to filing his motion to amend. Moreover, even if he had, as noted above, those claims were clearly not exhausted *prior to the filing of this suit,* and therefore, are not properly raised in this action.

copy of any objections should also be submitted to the Honorable John Preston Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff.

DATED: May 25. 2007

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE